*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MARIO RAY CHILDS,

        Defendant-Appellant.

UNPUBLISHED
March 10, 2022

No. 354401
Wayne Circuit Court
LC No. 19-002498-01-FC

Before: GADOLA, P.J., and BORRELLO and M. J. KELLY, JJ.

PER CURIAM.

Defendant, Mario Childs, appeals as of right his conviction, following a jury trial, of second-degree murder, MCL 750.317, for which the trial court sentenced him as a fourth-offense habitual offender, MCL 769.12, to 40 to 70 years' imprisonment. Because there are no errors warranting reversal, we affirm.

## I. BASIC FACTS

Childs's convictions arise from the fatal stabbing of Cedric Swanigan in their adult foster home in Detroit on March 3, 2019. Earlier in the day, Childs gave Swanigan money to purchase alcohol and cigarettes. Believing that Swanigan failed to give him the $30 in change from the purchases, Childs confronted Swanigan, who denied having the money. The two men argued, and, eventually, while no other tenants were present, Swanigan was stabbed with a knife that had been on Childs's dresser. The prosecution's theory was that Childs was the aggressor, possessed the knife, and stabbed Swanigan because he was angry. At trial, and in a statement that he gave to the police, Childs stated that he acted in self-defense. He explained that Swanigan grabbed the knife off the dresser and tried to stab him. Childs stated that he was in fear for his life, so he twisted Swanigan's wrist and turned the knife blade toward Swanigan, which caused the blade to go into Swanigan's abdomen. The jury rejected the self-defense claim and convicted Childs of second-degree murder.

## II. PROSECUTORIAL MISCONDUCT

### A. STANDARD OF REVIEW

Childs argues that the prosecutor's misconduct denied him a fair trial and that his lawyer was ineffective for failing to object to the prosecutor's misconduct. "In order to preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Because there was no objection, Childs's claims of prosecutorial misconduct are unpreserved. We review unpreserved claims of prosecutorial misconduct for plain error affecting the defendant's substantial rights. *Id.* "In order to avoid forfeiture of an unpreserved claim, the defendant must demonstrate plain error that was outcome determinative." *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001). Reversal is not warranted if the alleged prejudicial effect of the prosecutor's conduct could have been cured by a timely instruction. *Id.* Further, because "no *Ginther*[1] hearing has been conducted, our review of the defendant's claim of ineffective assistance of counsel is limited to mistakes that are apparent on the record." *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005).

### B. ANALYSIS

Childs argues that the prosecutor argued facts not in evidence by stating during his closing argument that the small cuts and scrapes on Swanigan's hands were "defensive wounds." According to Childs, there was no evidence that the knife caused those wounds and the medical examiner "rejected" any such suggestion.

Prosecutors may not make a statement of fact that is unsupported by the evidence, but they may argue reasonable inferences arising from the evidence to the extent that the inferences relate to their theory of the case. *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007) (citations omitted). Photographs of Swanigan's hands, which depicted small cuts, were admitted in evidence and discussed at trial. Thus, there was evidence that there were some type of abrasions on Swanigan's hands. During his examination, Childs was shown photographs of Swanigan's hands, and, when asked if he knew how Swanigan received the scrapes and blood on his hands, Childs stated: "Because he was holding the knife." Childs later testified that he "didn't know how [Swanigan] was holding the knife but it was in his hand," and he believed that Swanigan was holding the knife by the handle and not the blade. Although there was no direct evidence that Swanigan received the abrasions on his hands while trying to defend himself, the evidence supported a reasonable inference that the abrasions were caused by Swanigan's hands coming into contact with the serrated blade of the knife. The inference from the evidence that the abrasions were "defensive wounds" relates to the prosecutor's theory that Childs was the person who possessed the knife, and, therefore, was not acting in self-defense when he stabbed Swanigan.

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Accordingly, viewed in context, the prosecutor's argument was not improper.[2]  Furthermore, because the prosecutor's remarks were not improper, Childs's lawyer's failure to object was not objectively unreasonable.  See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

Next, Childs argues that the prosecutor engaged in misconduct by seeking admission of a video recording depicting him in the back seat of a patrol vehicle.  In the video, Childs makes numerous unprompted comments.  Although an officer was sitting in the front seat, there was no engagement between Childs and the officer.  On appeal, Childs contends that the video was unfairly prejudicial.  Additionally, he notes that his statements during the video that he is "a true killer," who "don't like most people baby.  I tolerate 'em," "I joke," and "I'll kill you" were inadmissible under MRE 404(a).

Generally, all relevant evidence is admissible unless otherwise provided for in the court rules or the state or federal constitutions.  *People v Yost*, 278 Mich App 341, 355; 749 NW2d 753 (2008).  Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  MRE 401.  "A trial court admits relevant evidence to provide the trier of fact with as much useful information as possible."  *People v Cameron*, 291 Mich App 599, 612; 806 NW2d 371 (2011).  However, even if evidence is relevant, it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice."  MRE 403.  "Evidence of a person's character or a trait of character is not admissible for the purposes of proving action in conformity therewith."  MRE 404(a).

Here, the challenged evidence was relevant to factual issues in this case and was not offered for purposes of showing that Childs was acting in conformity with a negative character trait.  While Childs highlights certain remarks, he ignores that he made the statements immediately after the stabbing.  The prosecutor reasonably advanced that Childs's comments were evidence of Childs's state of mind at the time he stabbed Swanigan, which was directly relevant to the prosecution's theory of the case and weakened Childs's theory of self-defense.  Indeed, Childs's claim of self-defense enhanced the probative value of the evidence, which tended to show that Childs was not defending himself when he stabbed Swanigan.

---

[2] Childs directs this Court to the medical examiner's testimony that, other than the fatal stab wound to his abdomen, Swanigan had "no other injuries."  On the basis of this testimony, Childs asserts that the prosecutor's argument regarding defensive wounds "was rejected" by the medical examiner.  However, the medical examiner explained her role as a pathologist, and it was apparent that the aim of her testimony was to reveal the cause of death.  Regardless, as noted above, the photographs depicting the injuries to Swanigan's hands were admitted at trial.  Thus, notwithstanding the medical examiner's testimony—which the jury was free to believe or disbelieve—there was a factual basis for the prosecutor's argument.

Further, the evidence was not unduly prejudicial. Under MRE 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Contrary to what Childs suggests, MRE 403 is not intended to exclude "damaging" evidence. Indeed, any relevant evidence will be damaging to some extent. *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995). Instead, under the balancing test of MRE 403, this Court must first decide if the evidence was unfairly prejudicial, and then "weigh the probativeness or relevance of the evidence" against the unfair prejudice" to determine whether any prejudicial effect substantially outweighed the probative value of the evidence. *Cameron*, 291 Mich App 611 (quotation marks and citation omitted). Unfair prejudice exists where there is "a danger that marginally probative evidence will be given undue or pre-emptive weight by the jury" or "it would be inequitable to allow the proponent of the evidence to use it." *Mills*, 450 Mich at 75-76 (quotation marks and citation omitted). "The 'unfair prejudice' language of MRE 403 refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *Cameron*, 291 Mich App 611 (quotation marks and citation omitted). Here, although the evidence was prejudicial, it was not unfairly prejudicial. It was not offered for a character purpose and it was highly probative to the issue of whether Childs had been acting in self-defense when he stabbed Swanigan.

Based on the foregoing, Childs's claim that the prosecutor engaged in misconduct by seeking admission of the video recording is without merit. Likewise, the prosecutor was free to use the admitted evidence, including extracted segments from the recording, to argue during closing argument that Childs was not acting in self-defense. Prosecutors may argue the evidence and all reasonable inferences that arise from the evidence as it relates to their theory of the case, and they need not state their inferences in the blandest possible language. *Dobek*, 274 Mich App at 66. Additionally, because the challenged evidence did not violate MRE 404(a) and was not unfairly prejudicial, and the prosecutor did not engage in misconduct by using the challenged evidence during trial, Childs's ineffective-assistance claim is without merit. See *Ericksen*, 288 Mich App at 201.

Next Childs argues that his lawyer was ineffective for failing to object to the admission of five prosecution exhibits that were extracted segments from the approximate one-hour video recording. Childs contends that his lawyer should have objected because the exhibits "were needlessly cumulative, lacked any probative value, and should have been excluded under MRE 403." After the video recording was admitted, the prosecutor explained that the five additional exhibits "are just different segments so that we don't have to watch the whole hour and a half of the backseat video." Childs's lawyer had no objection, indicating that the video recording was "already an admitted exhibit." Indeed, the prosecutor was not required to play the recording in its entirety. Because a defense lawyer cannot be deemed ineffective for failing to raise a futile objection, and because Childs has not provided a logical basis for an objection, we conclude he cannot show that his lawyer's inaction in this regard was objectively unreasonable. See *Ericksen*, 288 Mich App at 201.

Childs further argues that his lawyer was ineffective when she "falsely charged that [Childs] did not immediately come forward to say he acted in self-defense," and failed to use comments from the patrol car video recording to show that he "came forward" immediately. Childs relies on remarks made by his lawyer during closing argument, where she emphasized his

statements to the police. Yet, Childs's lawyer reasonably could have chosen not to present evidence from the patrol car recording because, contrary to what Childs asserts, the available comments were still damaging and were not as supportive as Childs asserts. In fact, it appears that Childs's lawyer made a strategic decision to attempt to distance Childs from responsibility for any of his remarks, arguing, for example: "Everything he says after is after the crack cocaine is infiltrating his system. He says awful things. But he's not on trial for saying awful things. He's not on trial for being mad, ornery, calm, being shocked, he's not on trial for any of those things." Childs's lawyer instead chose to focus on the fact that Childs gave a statement to the police, in which he claimed self-defense, only hours after the incident, as soon as he was interviewed by the police.

Moreover, the decision to rely on Childs's police statement, as opposed to the patrol car recording, was objectively reasonable because that is when Childs "came forward" and talked to the police. Childs's comments in the patrol car, in which he was seemingly talking to himself, did not constitute Childs "coming forward" to talk to the police. The police officer had not done anything to prompt Childs's comments, and there was no engagement between them. Thus, Childs's claim that his lawyer made a "false" argument about when he came forward is misplaced. Consequently, Childs has not established a claim of ineffective assistance.

Childs next argues that the prosecutor acted in bad faith by failing to file the proper notice and seeking a ruling from the trial court before attempting to impeach Childs with a prior conviction. A prior conviction may be used to impeach a witness's credibility if the conviction satisfies the criteria set forth in MRE 609. *People v Cross*, 202 Mich App 138, 146; 508 NW2d 144 (1993). The prosecutor sought to elicit evidence of Childs's prior conviction, on cross-examination of Childs, in the following exchange:

> *Q.* Now, Mr. Childs, do you have any prior felony convictions involving theft or dishonesty in the last ten years?
>
> *A.* Say that again.
>
> *Q.* Do you have any—
>
> Childs's lawyer: Objection, your Honor.

Following a bench conference, the prosecutor stated: "I'd strike that question."

A "prosecutor's good-faith effort to admit evidence does not constitute misconduct." *Dobek*, 274 Mich App at 72. There is nothing in the record to support that the prosecutor acted in bad faith. Childs contends that the prosecutor's bad faith is evident because the prosecutor failed to file any notice and seek a prior ruling from the trial court. This unpreserved argument fails because the plain language of MRE 609 does not mandate that the prosecutor provide advance warning of her intention to impeach a defendant with a prior conviction. Therefore, the prosecutor's cross-examination question regarding Childs's prior conviction does not constitute a "clear or obvious" error on the basis that the prosecutor acted in bad faith. See *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Further, because Childs did not answer the question, no improper prior conviction was admitted in evidence. He has not demonstrated that

the question, by itself, affected his substantial rights. Therefore, Childs is not entitled to appellate relief with respect to this issue. Childs also faults his lawyer for objecting to the prosecutor's question, as opposed to allowing him to answer the question in the negative. However, because Childs did not have a prior conviction that could have been used for impeachment, his lawyer's decision to object to the prosecutor's question, to avoid improper impeachment, was not objectively unreasonable.

Finally, Childs argues that the cumulative effect of the prosecutor's conduct and his lawyer's errors requires reversal. We review a claim of cumulative error to determine whether a combination of errors denied defendant a fair trial. *Dobek*, 274 Mich App at 106. Here, as there were no errors, Childs cannot establish that he is entitled to reversal on the basis of cumulative error. See *id*. ("Absent the establishment of errors, there can be no cumulative effect of errors meriting reversal.").

## III. JURY INSTRUCTIONS

Childs next argues that he is entitled to a new trial because the trial court's instructions on self-defense were inadequate. Specifically, Childs contends that, although the court instructed the jury on the use of deadly force in self-defense, M Crim JI 7.15, and the burden of proof when self-defense is asserted, M Crim JI 7.20, the court erred by failing to also give M Crim JI 7.16(2), no duty to retreat, and M Crim JI 7.16a, the rebuttable presumption regarding fear of death or great bodily harm.

However, Childs did not object to the trial court's jury instructions as given, or request M Crim JI 7.16(2) and M Crim JI 7.16a. Indeed, after the trial court completed its final instructions and before the jury was excused to begin deliberations, the court asked the parties whether there were any objections. Childs's lawyer stated: "Nothing that hasn't been previously stated."[3] By expressly approving the jury instructions, Childs waived appellate review of his substantive claims of instructional error. See *People v Kowalski*, 489 Mich 488, 504; 803 NW2d 200 (2011) (holding that by approving the jury instructions on the record the defendant waives any objection to the instructions). Childs's waiver extinguished any error, leaving no error to review. See *id*. (stating that waiver extinguishes any error, leaving nothing for this Court to review).

Childs alternatively argues that his lawyer was ineffective for not requesting M Crim JI 7.16(2) and M Crim JI 7.16a, and for failing to object when they were not given. Whether defense counsel's failure to object to the trial court's jury instructions was objectively unreasonable depends on whether the court's instructions fairly presented the issues and sufficiently protected defendant's substantial rights. Due process requires that the trial court "properly instruct the jury so that it may correctly and intelligently decide the case." *People v Clark*, 453 Mich 572, 583; 556 NW2d 820 (1996). To that end, the jury instructions "must include all the elements of the crime charged, and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them." *People v Armstrong*, 305 Mich App 230, 240; 851 NW2d 856 (2014) (quotation marks and citation omitted).

---

[3] The previously stated matters did not include the self-defense instructions at issue.

M Crim JI 7.16(2) provides:

> However, a person is never required to retreat if attacked in [his / her] own home, nor if the person reasonably believes that an attacker is about to use a deadly weapon, nor if the person is subject to a sudden, fierce, and violent attack. [Footnote omitted.]

The evidence showed that both Childs and Swanigan lived in the adult foster care home, each man had his own bedroom, and their bedrooms were next to each other. Childs's argument that he was entitled to an instruction that he was not required to retreat to avoid the use of deadly force is premised on his claim that Swanigan attacked him in "[Childs's] home and within and/or within the doorway of his room." Even accepting that Childs's bedroom in this particular facility would be akin to his own home, there is no evidence that Swanigan threatened or attacked Childs with the knife while Childs was in his bedroom. Contrary to what Childs now claims, he did not testify that the attack occurred in the bedroom, nor did he testify that, while in his bedroom, Swanigan threatened him with any bodily harm. Instead, Childs repeatedly testified that he was in the hallway when Swanigan "came at" him with the knife. Childs explained that after their argument about money in his bedroom, where neither man threatened or physically touched the other, he walked out of his bedroom into the hallway, and he was still in the hallway when Swanigan approached him with the knife. Childs testified that he walked out of his room, away from Swanigan, because he "didn't wanna hear no more," not because he had been threatened or was in fear. In addition, Stevens—who was sitting in Childs's room at the time that Swanigan was stabbed—testified that the men were in the hallway, that she was in Childs's room alone, and that, because of where she was sitting in the room, she could not see either man. Taken together, Childs's and Stevens's testimony shows that Swanigan did not attack Childs while Childs was within the "curtilage" of his bedroom. Consequently, there was no factual dispute regarding whether Childs had a duty to retreat, and, thus, M Crim JI 7.16(2) was not applicable.

M Crim JI 7.16a was also not applicable. M Crim JI 7.16a provides, in pertinent part:

> (1)     If you find both that—
>
> (a)     the deceased was in the process of breaking and entering a business or dwelling, or committing home invasion, or had broken into a business or dwelling, or committed home invasion and was still present in the business or dwelling . . . .
>
> and
>
> (b)     the defendant honestly and reasonably believed the deceased was engaged in any of the conduct just described
>
> —it is presumed that the defendant had an honest and reasonable belief that imminent [death / great bodily harm / sexual assault] would occur . . . .

-7-

(2) This presumption does not apply if—

* * *

(a) the deceased had the legal right to be in the dwelling . . . .

Childs argues that he was entitled to the rebuttable-presumption instruction because "Swanigan pushed open [Childs's] closed [bedroom] door without knocking and without seeking his permission, and attempted to assault him with a steak knife while inside. These actions qualified as both breaking and entering and home invasion . . . ." Again, however, this argument is not supported by the record. Childs testified that the attack occurred while he was still in the hallway. Swanigan, as a tenant of the adult foster home, also had the legal right to be in the hallway in the home, and Childs did not present evidence to the contrary. Consequently, there is no evidence to support this instruction.

Because Childs's challenges to the jury instructions are without merit, he cannot show that counsel's failure to request M Crim JI 7.16(2) and M Crim JI 7.16a, or failure to object when these instructions were not given, fell below an objective standard of reasonableness. See *Ericksen*, 288 Mich App at 201.

## IV. STANDARD 4 BRIEF

Childs raises additional issues in a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, none of which have merit.

## A. CRIMINAL RESPONSIBILITY

First, Childs asserts that he was denied a criminal responsibility evaluation. The record disproves his claim. At the April 17, 2019 Calendar Conference, Childs's lawyer requested a referral for competency and criminal responsibility, and the trial court issued an order for defendant to be evaluated at the Center for Forensic Psychology (CFP). At the competency hearing, the court stated that it had been informed that the CFP had not yet evaluated Childs for criminal responsibility, apparently because the CFP had not received the court order. As a result, a copy of the order was re-sent to the CFP, and Childs was subsequently evaluated for criminal responsibility. The CFP examiner concluded that Childs was criminally responsible, and thus, his mental status did not meet the requirements for legal insanity. At the final conference on June 21, 2019, the trial court made findings on the record and concluded that Childs was "competent as it relates to the issue of criminal responsibility." Consequently, there is no merit to Childs's claim that he was not evaluated for criminal responsibility. Additionally, because a competency referral was requested by Childs's lawyer and the evaluation was performed, there is no merit to Childs's claim that his lawyer was ineffective for failing to address the need for a criminal responsibility evaluation. See *Ericksen*, 288 Mich App at 201.

## B. VOLUNTARY INTOXICATION DEFENSE

In his last issue, Childs argues that, given his use of alcohol and drugs, he was entitled to an intoxication defense. However, "second-degree murder is a general-intent crime to which

voluntary intoxication is not an available defense." *People v Goecke*, 457 Mich 442, 464; 579 NW2d 868 (1998). Childs, therefore, was not entitled to a voluntary-intoxication defense.

Affirmed.

/s/ Michael F. Gadola
/s/ Stephen L. Borrello
/s/ Michael J. Kelly